UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

KESIENA DENNIS OBIENU                         CIVIL ACTION

VERSUS                                        NO. 25-1028

ARCHDIOCESE OF NEW ORLEANS, *et al.*          SECTION M (2)

## ORDER & REASONS

Before the Court is a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure filed by defendants The Roman Catholic Church of the Archdiocese of New Orleans ("ANO"), erroneously named as "Archdiocese of New Orleans"; Fr. Colm Cahill, erroneously named as "Father Colm Cahil"; and Fr. Dan Darmanin, erroneously named as "Father Dan Damani" (collectively, "Defendants").[1] Plaintiff Kesiena Dennis Obienu responds in opposition,[2] and Defendants reply in further support of their motion.[3] Having considered the parties' memoranda, the record, and the applicable law, the Court issues this Order & Reasons granting the motion.

**I.    BACKGROUND**

This case concerns claims of discrimination and defamation. Obienu, a United States citizen of Nigerian origin, moved to New Orleans in 2017 to pursue a Master of Arts degree in theological studies at the Notre Dame Seminary to prepare for the priesthood.[4] Obienu alleges that he began experiencing discrimination in June 2019, when Fr. Cahill ignored his request for assistance in purchasing a new car after his old one broke down and Obienu decided to buy himself

---

[1] R. Doc. 14.
[2] R. Doc. 16.
[3] R. Doc. 20.
[4] R. Doc. 1 at 2, 8-9.

a used 2019 Buick Encore.[5] Obienu alleges that, when Fr. Cahill found out about the vehicle purchase, he "called [Obienu] and spoke to him in a demeaning way, [and] questioned the source of his downpayment and insisted that [Obienu] sell his car."[6] After Obienu sold the newly acquired car, Fr. Cahill refused to help him reclaim his old car, which was in the possession of the ANO's vocations office; threatened Obienu with retaliation for seeking help from the previous ANO vocations director; and summoned Obienu to face a disciplinary panel, which included Archbishop Gregory Aymond, to question Obienu about the source of his funds to purchase the car.[7] According to Obienu, other seminarians had similar or newer cars and were not subjected to such treatment.[8]

Obienu alleges that "the abuse" continued when he refused to continue mental health treatment after one visit.[9] He alleges a laundry list of complaints against Fr. Cahill, including: that in January 2021, Fr. Cahill failed to reinstate Obienu's medical insurance "all the while showing his disdain for [Obienu]"; that Fr. Cahill told Obienu he should not hope for priestly ordination; and that Fr. Cahill caused Obienu to be "*laicized*, and seek a new diocese where he would *excardinate*."[10]

According to Obienu, Archbishop Aymond refused his request to leave the ANO.[11] Obienu was then ordained as a priest "against his express wishes," and, in July 2022, he was assigned to St. Margaret Mary Church in Slidell, Louisiana, where he experienced more discrimination by Fr. Darmanin.[12] Obienu claims that Fr. Darmanin told him not to leave any leftovers in the refrigerator

---

[5] *Id.* at 9. The facts from the complaint recounted here are taken to be true at this motion-to-dismiss stage.
[6] *Id.* at 9-10.
[7] *Id.* at 10.
[8] *Id.* at 10-11.
[9] *Id.* at 11.
[10] *Id.* (emphasis in original).
[11] *Id.*
[12] *Id.*

so it would not smell.[13]  Also, Obienu alleges that his weekly stipend was $20 less than it should have been, the ANO did not pay his phone bill as it did for other priests, he was refused reimbursement for continuing education, he was not permitted to be a co-signer on parish accounts, and the parish staff refused to follow his instructions.[14]  Obienu says that he was subjected to a "retaliatory investigation and then removed from the parish" when he complained about the treatment he received.[15]

Then, in January 2023, Archbishop Aymond assigned Obienu to work part-time, without a specific job description, at two nursing homes and denied him the ability to stay in a rectory, which forced him to live in a senior-living apartment for six months without a food allowance.[16]  According to Obienu, the nursing home assignment was "the result of him being terminate by [the ANO] without notice to him."[17]  Obienu contends that he learned of the termination in August 2023, when he was reassigned to the Immaculate Conception Church in Marrero, Louisiana, to work part-time and accidentally discovered that his 401(k) retirement account had been terminated by the ANO.[18]  On April 24, 2024, Obienu received a letter advising him that he was under investigation for impersonating a chaplain.[19]  He believes that the letter resulted from his complaining about the nursing-home posting and other issues related to his "undisclosed" termination.[20]  Obienu then took a leave of absence.[21]

---

[13] *Id.*
[14] *Id.* at 11-12.
[15] *Id.* at 12.
[16] *Id.*
[17] *Id.*
[18] *Id.* at 12-13.
[19] *Id.* at 13.
[20] *Id.*
[21] *Id.*

3

Obienu filed this suit on May 22, 2205.[22]  He brings federal and state-law employment discrimination claims against the ANO for wrongful termination, failure to promote, failure to allow him to complete the training necessary for promotion, unequal terms and conditions of employment, and retaliation.[23]  Obienu also alleges Louisiana state-law claims against all Defendants for libel and slander (defamation), civil conspiracy, negligence, and intentional and negligent infliction of emotional distress.[24]  In addition to compensatory damages, Obienu seeks punitive damages and attorney's fees and costs.[25]  Finally, Obienu asks for leave to amend the complaint to the extent the Court finds any pleading deficiencies.[26]

## II. PENDING MOTION

Defendants move to dismiss Obienu's defamation, negligence, and intentional- and negligent-infliction-of-emotional-distress claims, arguing that they are all prescribed under Louisiana's one-year prescription period, because all the incidents alleged in the complaint occurred from 2019 through July of 2023, and possibly in April 2024, more than a year before Obienu filed suit on May 22, 2025.[27]  Defendants also move to dismiss Obienu's conspiracy claim, asserting that there is no independent cause of action for civil conspiracy under Louisiana law and that Obienu failed to adequately plead such a claim, because he does not allege any facts suggesting intentional or willful acts nor any affirmative agreement among the Defendants to engage in tortious conduct.[28]

In opposition, Obienu argues that his defamation, negligence, intentional- and negligent-infliction-of-emotional-distress claims are not prescribed because the mistreatment continued

---

[22] *Id.* at 1-27.
[23] *Id.* at 15-16.
[24] *Id.* at 16-24.
[25] *Id.* at 13-15, 24-25.
[26] *Id.* at 10.
[27] R. Doc. 14-1 at 1, 5-9.
[28] *Id.* at 1, 5, 9-12.

through at least April 2024, which he says, is less than one year before May 22, 2025.[29] He also asserts that prescription should be tolled because there was an "ongoing pattern" of "discrimination, misrepresentations to third parties, and attempts to harm his professional standing as recently as 2024."[30] Further, Obienu contends that he has sufficiently alleged the elements of a civil conspiracy at this stage of the proceeding.[31]

Defendants reply, reurging that Obienu's claims for defamation, negligence, and tortious conduct are prescribed.[32] They point out that Obienu, in his opposition, says that the last date of any tortious act was in April 2024, more than a year before suit was filed and that Obienu does not specify any factual allegations to support his insinuations of continuing torts or delayed discovery.[33] Further, Defendants reassert that there is no stand-alone claim for civil conspiracy in Louisiana and that Obienu has failed to allege the necessary willful conduct and agreement to commit torts.[34]

## III.  LAW & ANALYSIS

### A. Rule 12(b)(6) Standard

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The statement of the claim must "'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'"

---

[29] R. Doc. 16 at 6.
[30] *Id.*
[31] *Id.* at 7.
[32] R. Doc. 20 at 1-7.
[33] *Id.*
[34] *Id.* at 8-9.

*Twombly*, 550 U.S. at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A pleading does not comply with Rule 8 if it offers "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (alteration omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on the face of the complaint "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Plausibility does not equate to probability, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Thus, if the facts pleaded in the complaint "do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679 (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

In considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court employs the two-pronged approach utilized in *Twombly*. The court "can choose to begin by identifying pleadings that, because they are no more than conclusions [unsupported by factual allegations], are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. However, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether

they plausibly give rise to an entitlement to relief." *Id.* "'[The] task, then, is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success.'" *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 385 (5th Cir. 2017) (quoting *Doe ex rel. Magee v. Covington Cty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012)).

A court's review of a Rule 12(b)(6) motion to dismiss "is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498-99 (5th Cir. 2000)). A court may also take judicial notice of certain matters, including public records and government websites. *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008); *see also Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453, 457 (5th Cir. 2005). Thus, in weighing a Rule 12(b)(6) motion, district courts primarily look to the allegations found in the complaint, but courts may also consider "documents incorporated into the complaint by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." *Meyers v. Textron, Inc.*, 540 F. App'x 408, 409 (5th Cir. 2013) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)).

**B. Analysis**

  **1. Prescription**

Defendants move to dismiss Obienu's Louisiana state-law claims for defamation,[35] negligence, intentional and negligent infliction of emotional distress, and civil conspiracy arising

---

[35] "A claim of libel or slander is generally a claim of defamation, since defamation occurs through either libel or slander." *Sova v. Cove Homeowner's Ass'n, Inc.*, 102 So. 3d 863, 873 (La. App. 2012). "Libel is defamation which

therefrom, all of which are delictual actions. *See Clark v. Wilcox*, 928 So. 2d 104, 112 (La. App. 2005) (recognizing that a claim for defamation is subject to the one-year delictual prescriptive period); *Copeland v. Wasserstein, Perella & Co.*, 278 F.3d 472, 478 (5th Cir. 2002) (recognizing that a claim for negligence is subject to the one-year delictual prescriptive period); *King v. Phelps Dunbar, L.L.P.*, 743 So. 2d 181, 187 (La. 1999) (recognizing that a claim for intentional infliction of emotional distress is subject to the one-year delictual prescriptive period); *Horn v. Transdev Servs., Inc.*, 2021 WL 4312694, at *7 (E.D. La. July 29, 2021) (holding that Louisiana law civil conspiracy claims are delictual actions subject to the one-year prescriptive period), *adopted*, 2021 WL 4311050 (E.D. La. Sept. 22, 2021). Thus, the prescriptive period for delictual actions in effect at the time the torts allegedly occurred would apply. Here, the torts all allegedly occurred in, or prior to, April 2024.[36] At that time, Louisiana Civil Code article 3492 provided a one-year liberative prescription period for delictual actions.[37]

Quite simply, neither the complaint nor Obienu's opposition memorandum points to any alleged act of any Defendant supporting any of the purported causes of action at issue in the present motion that occurred within the one-year prescriptive period, that is, after May 22, 2024. At most, Obienu rests on generalities and legal conclusions. Obienu has not demonstrated that the continuing tort doctrine applies. "The continuing tort doctrine is [an] exception to the running of prescription, which is implicated when damaging conduct is of a continuous nature, such that prescription does not begin to run until the date of the last harmful act." *Bottinelli Real Est., L.L.C.*

---

is expressed by print, writing, pictures, or signs, while slander is communicated by oral expressions or transitory gestures." *Id.* (quotation omitted).

[36] *See* R. Docs. 1; 16 at 6-7.

[37] Louisiana Civil Code article 3493.1, effective July 1, 2024, establishes that delictual actions are now subject to a liberative prescription of two years. The provisions of Act. No. 423, enacting the changes to this prescriptive period, "shall be given prospective application only and shall apply to delictual actions arising after the effective date of this Act." 2024 La. Act No. 423, § 3. Accordingly, the former one-year prescriptive period applies to the incidents at issue here, which took place prior to July 1, 2024.

*v. Johns Manville, Inc.*, 288 So. 3d 179, 187 (La. App. 2019) (quotation and alterations omitted). Obienu does not identify any specific acts by any Defendant that allegedly occurred or continued after April 2024. Thus, the Court must consider April 2024 as the date that prescription began to run, which is more than one year prior to the May 22, 2025 filing date. In sum, Obienu's Louisiana state-law claims for defamation, negligence, intentional and negligent infliction of emotional distress, and, by extension, civil conspiracy, are prescribed.[38]

### 2. Leave to Amend

Plaintiff seeks leave to amend his complaint to the extent the Court finds any pleading deficiencies.[39] A district court should "freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, leave to amend "is by no means automatic," *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994), and a "mere call for amendment, without more, is not enough." *Landscape Images Ltd. v. IberiaBank Corp.*, 2024 WL 4457844, at *5 (5th Cir. Oct. 10, 2024). Courts consider multiple factors in determining whether to grant leave to amend, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[A] bare bones motion to amend remains futile when it fails to apprise the district court of the 'facts that [plaintiff] would plead in an amended complaint.'" *Edionwe v. Bailey*, 860 F.3d

---

[38] Under Louisiana Civil Code article 2324(A), "[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act." To prove a civil conspiracy under Louisiana law, a plaintiff must show "that an agreement existed to commit an illegal or tortious act; the act was actually committed and resulted in plaintiff's injury; and there was an agreement as to the intended outcome or result." *Crutcher-Tufts Res., Inc. v. Tufts*, 38 So. 3d 987, 991 (La. App. 2010). Conspiracy is not itself an actionable tort in Louisiana. *Bishop v. Bd. of Supervisors of La. State Univ.*, 2023 WL 6465131, at *9 (W.D. La. Sept. 30, 2023). Rather, the actionable element of a conspiracy claim is "the tort that the conspirators agree to perpetrate and actually commit in whole or in part." *Id.* (quotation omitted). When there is no underlying tort claim, there is no conspiracy claim. Here, the tort claims are all prescribed, and so, the conspiracy claim must also fall. Moreover, Obienu fails to allege the particulars of any agreement as would support a conspiracy claim.

[39] R. Doc. 16 at 8.

287, 295 (5th Cir. 2017) (alteration omitted) (quoting *Gentilello v. Rege*, 627 F.3d 540, 546 (5th Cir. 2010)).

Obienu has not demonstrated that leave to amend is warranted because he does not supply any details as to any additional facts he would plead to show that his tort claims are not prescribed. *See Adams v. Anderson*, 2025 WL 2211921, at *3 (E.D. La. Aug. 1, 2025) (refusing to grant leave to amend where plaintiff did not apprise the court of the facts she would plead in an amended complaint) (citing *Rombough v. Bailey*, 733 F. App'x 160, 165 (5th Cir. 2018) (holding that where plaintiff "failed to apprise the court of the facts she would plead in her amended complaint . . . the district court did not err when it denied her motion to amend as futile"); *Peykoff v. Cawley*, 2025 WL 1380070, at *8 (5th Cir. May 13, 2025) (holding that the plaintiffs' "one-sentence request, embedded in their opposition to the motion to dismiss, is insufficient to warrant reversal" of the district court's denial of plaintiffs' leave to amend, especially in the "absence of any proposed amendments, compounded by the lack of grounds for such an amendment" (quotation omitted))). Thus, the Court will not grant Obienu leave to file an amended complaint that would likely be futile.

### IV.   CONCLUSION

Accordingly, for the foregoing reasons,

IT IS ORDERED that Defendants' Rule 12(b)(6) motion to dismiss for failure to state a claim (R. Doc. 14) is GRANTED, and Obienu's Louisiana state-law claims for defamation, negligence, intentional and negligent infliction of emotional distress, and civil conspiracy are DISMISSED WITH PREJUDICE.

New Orleans, Louisiana, this 4th day of September, 2025.

_____
BARRY W. ASHE
UNITED STATES DISTRICT JUDGE